S. F. SAPPINGTON, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, June 10, 1902.

1. **Railroads:** STOCK-KILLING: FENCE: PROXIMATE CAUSE. In a stock-killing case it appeared that plaintiff's mules got into the railway inclosure through an opening between a cattle guard and an adjacent wing fence; afterwards the animals, apparently running in fright, passed over a public crossing and two other cattle guards, a half mile distant from the place where they entered the railway grounds, and were killed by a train some distance beyond: *Held,* that the defective condition of the cattle guard where the animals entered might be reasonably found to be the proximate cause of the killing of the animals by the train.

2. ———: LIABILITY OF RAILROAD FOR KILLING STOCK: PLACE OF ENTRY OF CATTLE. If cattle enter the inclosure of a railway company's tracks by its neglect to perform a statutory duty in regard to fencing, or cattle guards, at the place where the cattle entered, it is no defense that the cattle were killed at a place on the track where no breach of duty is shown to exist.

3. ———: DEFECTIVE STRUCTURE: TIME: NEGLIGENCE. Where a defective condition of a structure is open to casual observation and is shown to have existed for several months, that lapse of time, without other proof, warrants the inference of notice to the party bound to maintain the same and it therefore warrants a finding of negligence in failing to put the structure into proper condition.

4. Instructions: CATTLE GUARD: STATUTORY CONSTRUCTION. Where the court instructs, at the request of defendant, that a cattle guard is sufficient within the meaning of section 1105 (R. S. 1899), if it ordinarily, usually or generally prevents cattle from getting on the track, defendant can not complain of the instruction on appeal.

5. Practice, Appellate: PARTIES. Parties are bound on appeal by positions they voluntarily assume in the trial court.

6. Practice, Trial: DEMURRER TO EVIDENCE. A party does not waive a demurrer to the evidence by afterwards asking an instruction on the merits of the case.

7. Verdict of Jury: INFERENCE: PRACTICE, TRIAL. Every fair and reasonable inference of fact which the evidence will bear should be made to support the verdict of a jury.

8. Party: INSTRUCTION, APPEAL: PRACTICE, APPELLATE. The party not appealing can not complain of an instruction given at the trial more favorable to the losing party than the law permits.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

AFFIRMED.

*F. Houston* for appellant.

There was no evidence, not one syllable, that all three of the cattle guards were not ordinarily sufficient.

The evidence was undisputed, that notwithstanding one strip of barbs four or five inches wide were mashed down on one guard, and that one strip was torn out of another guard, that the mules did not get in by walking through this narrow space, and that all the guards were nevertheless sufficient to prevent, and did for years prevent, horses, mules, and cattle from getting on the right of way. Cole v. Railroad, 47 Mo. App. 624; Jones v. Railroad, 59 Mo. App. 141.

*P. H. Cullen* for respondent.

(1) It is the settled law of this State that the appellate court, in determining whether the evidence is sufficient to support a verdict for the plaintiff, will lay aside defendant's controverting evidence, assume that plaintiff's evidence is true, and will give to it every favorable inference which may be reasonably and fairly drawn from it. James v. Mutual Life Ass'n, 148 Mo. 16; Cohn v. Kansas City, 108 Mo. 387. (2) If fences or barriers are defective at the point where the animals enter upon the right of way, and they are injured as a direct consequence of such entry, then it is no defense to show that at the point where they were killed the company maintained proper fences or barriers. Witthouse v. Railroad, 64 Mo. 523; Snider v. Railroad, 73 Mo. 465; Cecil v. Railroad, 47 Mo. 246; Moore v. Railroad, 81 Mo. 499. (3) It is the duty of a railroad company to construct a cross-fence or other barriers from the cattle guards to the fence on the sides of the road. R. S. 1899, secs. 1105, 2867; Edwards v. Railroad, 74 Mo. 117. (4) Plaintiff is entitled to recover on proof that the horses entered upon the railroad from a public road, even though he is not an adjoining or next adjoining owner of land. Morris v. Railroad, 79 Mo. 370; Rozzelle v. Railroad, 79 Mo. 345; Emerson v. Railroad, 35 Mo. App. 624. (5) Under section 1105, plaintiff is entitled to double damages.

The proper practice is for the jury to find the actual damages, and the court doubles the amount of the verdict and enters judgment for double the amount of said verdict, as was done in this case. Brandenburg v. Railroad, 44 Mo. App. 226; Kavanaugh v. Railroad, 75 Mo. App. 84; Kaes v. Railroad, 6 Mo. App. 397.

BARCLAY, J.—This case is due to a collision of four mules with a train of the Chicago & Alton railroad to the damage of the former. The owner of the mules sues for statutory (double) damages under section 1105 (R. S. 1899).

The petition charges that the animals got upon defendant's railway at a place where it was the duty of defendant to build and maintain lawful fences on each side of its railroad, and to maintain cattle guards and cross-fences sufficient to prevent mules from getting on the railway, and that in consequence of the failure of defendant to maintain such fences and guards plaintiff's mules went upon the railway of defendant and were struck by the locomotive and cars of defendant and killed. The damages were alleged at $400, and judgment for double damages was prayed.

The petition was not challenged in any way.

The answer was a general denial.

The case was tried before Judge HUGHES, with the aid of a jury. The result was a verdict for plaintiff for $375, which the court doubled in accordance with the statute (R. S. 1899, sec. 1105). Kingsbury v. Railroad, 156 Mo. 379.

The only point made on this appeal is that the case should not have been submitted to the jury for want of testimony to prove plaintiff's case.

The testimony tends to show that plaintiff was the owner of the mules which were killed, and that their aggregate value was $350 or $400. Plaintiff lived a few miles from the defendant's railway in Audrain county. The mules escaped from his inclosure one

night in February, 1901. There was snow two inches
deep on the ground at the time. The next day, about
noon, plaintiff traced their wanderings. The mules
ran along the public roads until they reached defend-
ant's railroad. The testimony tends to show that the
footprints of the mules were discovered in an open
space between a cattle guard and a wing fence connect-
ing the former with the main line of fencing alongside
of defendant's railway at that place. The general di-
rection of the public road, which the cattle guard ad-
joins, is north and south. On the east side of the pub-
lic road a space is open between the cattle guard
and the wing fence of about fourteen inches (according
to plaintiff's account) by actual measurement, and the
line of fencing runs from that point out from the rail-
way track at an angle of about forty-five degrees until
the general level of the connecting fence, parallel with
the railway, is reached. Through the opening thus de-
scribed the tracks of the animals were clearly traced by
the plaintiff on the morning following their escape
from his inclosure. The aperture in the fence was
so large that plaintiff easily rode through the
place mentioned on horseback, following the tracks
of his animals. The accident to them, however, did
not happen there, but further east, beyond another
public road which crossed the railway at a right angle
about a half-mile east of the first-named road. On
each side of that road were cattle guards. The animals
passed over both of these cattle guards (as their tracks
indicate), running at a high rate of speed, as plaintiff
said he could tell by their hoofmarks. They were killed
(or at least their bodies were found bearing every evi-
dence of that fact) on defendant's right of way near
the track beyond the public road last mentioned. That
they were killed by a locomotive or cars of defendant
is a very obvious inference from the plaintiff's testi-
mony. It was contradicted in many respects by that
of defendant, but the issue of fact was for the jury and

trial court.   There is nothing in this record to warrant any interference by this court on that branch of the case.

The learned trial judge, at the instance of defendant, instructed the jury that although they might believe from the evidence that "the barbs on one of the strips of the third cattle guard were mashed down, yet if the jury also find from the evidence that the mules did not get upon the right of way at this point by reason of such defect, and that this cattle guard was otherwise in good condition and was of a pattern in general use, and was usually and ordinarily sufficient to prevent stock from getting upon the right of way," then the verdict should be for defendant.

At defendant's instance the jury were also told that it devolved on plaintiff to prove by the greater weight "of the evidence, that the cattle guard over which the mules came upon the right of way and track of defendant, were not ordinarily or usually sufficient to prevent horses, cattle, mules, etc., from getting on its line of railroad; and unless he has so proved, your verdict must be for the defendant."

Another instruction for defendant, in regard to its duty concerning cattle guards, was as follows:

"The jury are further instructed that the defendant is not required by law to construct and maintain a cattle guard that will, absolutely and under all circumstances, prevent a horse or mule, or a breachy and fence-jumping animal or one under fright or excitement, from passing over it.   If the jury find from the evidence that the cattle guards in question were usually and ordinarily sufficient to prevent such animals from passing over them, and getting on its right of way and tracks, then the defendant was not guilty of negligence in constructing and maintaining said cattle guards, and your verdict must be for the defendant."

The instructions for plaintiff are not complained of.   They need not be copied.

Defendant asked a peremptory instruction to force plaintiff to a nonsuit, before making the requests above mentioned. But the court refused to give it and exception was duly saved.

After the verdict already mentioned and judgment for double the damages, defendant moved unsuccessfully for a new trial and, after the usual exceptions, appealed.

1. By asking for instructions on the merits of the case, which the court held should be submitted to the jury, defendant did not waive its exception to the refusal of its request in the nature of a demurrer to the evidence.

2. Defendant's point in reference to the facts in evidence is that the killing of the animals was not due to their getting on the railway at the place first mentioned, but to other causes not connectible with the first cause as proximate to the injury. The argument is that as the animals passed into the second public road after getting within the railroad inclosure near the first road because of the defect in the first cattle guard, the latter defect has no direct causal connection with the killing of the animals.

A very able and ingenious argument has been presented on that phase of the case by the learned counsel for appellant, but it has not disposed of all the difficulties in his way under the rules of law applied in this class of litigation by reason of prior decisions of the appellate courts of Missouri.

We are satisfied from an examination of the testimony that it might fairly and reasonably be inferred by the jury that the animals ran over the second and third cattle guards under the impulse of fright produced by an approaching train. The verdict indicates that the jury drew that inference, as they were entitled to do.

The law has been declared most clearly to be that if cattle get within the inclosure of a railway company's track by neglect to perform its statutory duty

in regard to maintaining proper fences or cattle guards at the place where the cattle enter, it is no defense to show that, at some distant point where the damage occurred, no fence or other statutory protection for cattle was required by the statute to be maintained. Witthouse v. Railroad, 64 Mo. 523; Edwards v. Railroad, 74 Mo. 117; Moore v. Railway, 81 Mo. 499; Warden v. Railway, 78 Mo. App. (K. C.) 644.

In this action there is testimony far more persuasive than in some of the cases cited, tending to show that plaintiff's animals were frightened by a train in the first inclosure they entered, and ran along the railway track and over all obstacles to the point where they were killed.

Under the decisions cited and the testimony before us, it can not properly be held as a conclusion of law that there was no testimony to connect directly the killing of the animals with the negligence in leaving the first cattle guard and adjacent wing fence in an obviously defective condition.

3. There was evidence for plaintiff that the condition of the fences, etc., as described, had existed for several months before the killing of the mules. That was sufficient lapse of time to warrant the inference of notice on the part of defendant of that condition, without other proof thereof, and of negligence in failing to put those safety barriers into proper condition.

4. At defendant's request the trial court, by instructions we have quoted, announced the law of the case to be in accord with the rulings of our learned brethren of the Kansas City Court of Appeals, which declare that if a cattle guard is ordinarily, usually or generally sufficient to prevent cattle or other animals from getting on the track it is "sufficient" within the meaning of section 1105 (R. S. 1899). Cole v. Railway Co., 47 Mo. App. (K. C.) 624; Jones v. Railway, 59 Mo. App. (K. C.) 137.

As the trial court gave defendant the benefit of

the construction of the law claimed by it in this partic-
ular, no ground of complaint on its part exists on that
account.

Parties are bound on appeal by the positions they
voluntarily assume in the trial court.

Nor are we bound to investigate the claim made by
respondent that said instructions were more favorable
to defendant than was warranted. Plaintiff did not
appeal, and if his contention is good it is merely a moot
one now.

We consider that the evidence justified the learned
trial judge in submitting the case to the jury, and that
there is no error in the record of which defendant may
rightly complain.

The judgment is affirmed. *Bland, P. J.,* and
*Goode, J.,* concur.